<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **GEORGE J. DAPONTE,** | : | Civil Action No.: 12-4016 (MAS) |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **& ORDER** |
| **BARNEGAT TWP. SCHOOL** | : | |
| **DISTRICT B.O.E., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

This matter comes before the Court on separate motions by the Parties. Pro se Plaintiff George J. DaPonte ("Plaintiff") has filed a Motion to Reopen the Case [dkt. no. 32] and a Motion for Recusal [dkt. no. 36]. Defendants Barnegat Township School District Board of Education, Joseph Saxton and Jason Bing (collectively, "Defendants") have opposed Plaintiff's Motions [dkt. nos. 33, 37].[1] Defendants have also filed a Motion to Enforce the Settlement [dkt. no. 30]. Plaintiff has opposed Defendants' Motion [dkt. no. 35]. The Court has considered the Parties' submissions pursuant to FED. R. CIV. P. 78 and, for the reasons set forth below, Plaintiffs' Motions are **DENIED** and Defendants' Motion is **GRANTED**.

### I.     INTRODUCTION

Plaintiff, a former employee of the Barnegat Township School District, filed suit alleging wrongful termination and discrimination. <u>See generally</u> Amended Complaint [dkt. no. 9].

---

[1] Co-Defendants New Jersey Education Association, Joan Szlaga and Lou Balka (collectively, "Association Defendants") also joined in opposing Plaintiff's Motions. [dkt. nos. 31, 34]

Plaintiff sought to recover compensatory damages for certain economic losses, including loss of pay, as well as emotional distress. See id.

On April 9, 2013, the Court conducted a settlement conference with the Parties. During that conference, the Parties reached an agreement to resolve Plaintiff's claims (the "Agreement"). Specifically, Defendants agreed to accept Plaintiff's request to recharacterize the basis for his termination and agreed to pay Plaintiff a total of $10,000. The terms of the Agreement were placed on the record before the Court. On April 11, 2013, the Court entered a 60-day Order dismissing the matter based on the Parties' settlement [dkt. no. 28].

On April 15, 2013, Defendants forwarded a General Release ("the Release") to Plaintiff. On April 24, 2013, Plaintiff returned a revised Release to Defendants. The revised Release included changes to a number of key terms of the settlement. For example, the revised Release changed the tax allocation of the settlement proceeds; required Defendants to prepare a formal letter of apology to be read at a public meeting; and deleted references to claims or causes of action covered by the Release (thus giving the impression that Plaintiff was reserving the right to bring future litigation against Defendants based on the same conduct).

As a result of Plaintiff's revisions, Defendants sought the Court's intervention. After separate telephones conference with the Court, it appeared that these issues had been resolved. Indeed, Plaintiff indicated that there was only one remaining issue: he no longer wished to have his employment status changed from a termination to a resignation, but instead wanted the basis of his termination changed to a reduction in force ("RIF"), effective June 30, 2011. Defendants agreed to Plaintiff's request.

Thereafter, on May 9, 2013, Defendants forwarded a revised Release to Plaintiff, which included all mutually agreed upon language and changed Plaintiff's basis for termination to a RIF. Plaintiff subsequently edited this Release with alternative language preferred by Plaintiff.

2

At some point before May 16, 2013, Plaintiff decided to consult with counsel from the law firm of Pelletieri, Rabstein & Altman.

One week later, on May 16, 2013, Plaintiff returned a signed Release that was "significantly altered if not entirely amended." Assc. Def.'s Br. at 2; see also Def.'s Cert. at 4, Ex. I. Specifically, Plaintiff increased the amount in his version of the Release by $930 based on "incurred fees and expenses." Def.'s Cert. at Ex. I.[2] Additionally, Plaintiff changed the payment allocation to indicate that the entire payment was for "pain and suffering" for deprivation of rights under 42 U.S.C. § 1983. Id. (Counts 1 and 2 of the Amended Complaint were for breach of contract; only Count 3 was for pain and suffering under 42 U.S.C. § 1983) Defendants promptly notified Plaintiff that his Release was not acceptable. Def.'s Cert. at Ex. J.

The Court conducted a status conference with the Parties on May 21, 2013. At that time, the Court advised Plaintiff of the options available to him in the event he wished to set aside the Agreement and reopen the matter.

On May 24, 2013, Defendants filed a Motion to Enforce the Settlement. On May 28, 2013, Plaintiff filed a motion to reopen this matter pursuant to FED. R. CIV. P. 60(b). Plaintiff alleges that the Parties' settlement agreement was not consummated as there was no acceptable Release signed. Pl.'s Br. at 7. Defendants, on the other hand, maintain that the settlement became binding when the Parties reached an agreement at the April 9th settlement conference. Def.'s Cert. at 2. On June 24, 2013, Plaintiff filed a Motion for Recusal.

## II.     PLAINTIFF'S MOTION TO RECUSE

Plaintiff alleges that this Court has a bias or prejudice against pro se litigants, the Plaintiff, or others who seek to "upturn its settlements." Pl.'s Recusal Br. at 3. Plaintiff claims

---

[2] Plaintiff later explained to the Court that this additional amount reflected the cost of consulting with the Pelletieri Firm.

3

that the Court has "deliberately violated" his rights "and/or has wantonly refused to provide due process and equal protection to [Plaintiff] in a manner consistent with which is needed for a full, fair, impartial hearing before an unbiased, unprejudiced [Court]." Id.

A determination regarding recusal lies within the sound discretion of the judge managing the matter. United States v. Wilensky, 757 F.2d 594, 599-600 (3d Cir. 1985). Two federal statutes govern the circumstances in which a judge should recuse himself. Section 455(a) of Title 28 of the United States Code provides, in pertinent part, that: "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably he questioned." "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." Allen v. Parkland Sch. Dist., 230 Fed. Appx. 189, 193 (3d Cir. April 27, 2007) (citation omitted).

Motions for recusal are also governed by 28 U.S.C. § 144. Recusal under 28 U.S.C. § 144 is mandatory "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." A "substantial burden is imposed on the party filing an affidavit of prejudice to demonstrate that the judge is not impartial." Frolow v. Wilson Sporting Goods Co., 2011 WL 1337513, at *2 (D.N.J. Apr. 7, 2011) (citation omitted). "In satisfying this burden, the movant must make a three-fold showing: (1) the facts must be material and stated with particularity; (2) the facts must be such that, if true they would convince a reasonable man that a bias exists; (3) the facts must show the bias is personal, as opposed to judicial, in nature." Id. (citing United States v. Thompson, 483 F.2d 527, 528 (3d Cir.1973)).

First, Plaintiff presents no persuasive grounds for recusal under 28 U.S.C. § 455(a). That is to say, no reasonable person would conclude that the Court's impartiality could be questioned. The Court conducted all settlement negotiations at arms' length, and afforded Plaintiff a full and fair opportunity to evaluate not only the terms of the settlement but also any alternative options available to him.

There is likewise no basis to grant Plaintiff's Motion under 28 U.S.C. § 144. Plaintiff has not stated the basis for his motion with particularity; no reasonable person would conclude that the Court acted with any bias; and there is no evidence of a personal prejudice on the part of the Court.

It appears that Plaintiff's Motion relates to comments made by the Court during the conference on May 21, 2013. Specifically, the Court stated, "You have overplayed your hand, Mr. DaPonte. Do you understand that reference?" Tr. of May 21 Conf. at 7:25-8:1. But context undermines Plaintiff's position:

> THE COURT: Why then do we now have a competing and substantially different form of release in this case?
>
> MR. DaPONTE: Once I received the -- well, looking at the release, I consulted with another law firm, particular interest in the release was referenced to Medicaid costs, which should be -- well, which would be incorporated into the final settlement which could impact future expenses for psychiatric care and so forth down the road. That was a significant issue relative to providing a release like that.
>
> THE COURT: I don't understand what you're talking about.
>
> MR. DaPONTE: The settlement -- the reference to the settlement in the release which, if I sign it, then future care related to this particular case, which is any psychiatric type of, I guess, treatments that could be associated with this particular situation should -- well, should be borne -- should be incorporated into the final settlement. Meaning I would have to pay any future expenses -- medical expenses out of the settlement, which is not acceptable.

>THE COURT: First of all, you acknowledge that we never discussed -- it was never an element of the settlement. Future medical costs was never an element of the settlement that was discussed when we were together on April 9th, correct?
>
>MR. DaPONTE: Right.
>
>THE COURT: So, this is something that you have become concerned about since we were together?
>
>MR. DaPONTE: Exactly. When I consulted with the firm, they read it, and they –
>
>THE COURT: You acknowledge that when you were here the first time, when you were here the second time, I asked you whether you intended to retain counsel, correct?
>
>MR. DaPONTE: That is correct.
>
>THE COURT: In fact, I encouraged you to retain counsel, did I not?
>
>MR. DaPONTE: That is correct.
>
>THE COURT: Okay. You, for whatever reason, decided you wanted to proceed on your own. So, you decided after we had reached a settlement, the settlement was negotiated, concluded, and placed on the record, that at that point you wanted to talk to a lawyer?
>
>MR. DaPONTE: I did have another attorney. I provided the document to him, he didn't raise that concern. So, I went to another firm who was handling another case, and they raised other issues which the prior attorney didn't. And so with that new information, I –
>
>THE COURT: Why is there a different settlement amount? Where does this $930 come from?
>
>MR. DaPONTE: Well, because of this particular reason, all the stipulations in it, I had to hire a new firm and pay an hourly rate. So, I put in my expenses.
>
>THE COURT: *You have overplayed your hand, Mr. DaPonte. Do you understand that reference?*
>
>MR. DaPONTE: I understand that.

Tr. of May 21 Conf. at 5:24-8:2.

Based on the above, there is no evidence to suggest any personal bias on behalf of the Court. Plaintiff, therefore, has not carried his "substantial burden" to demonstrate impartiality. See Frolow, 2011 WL 1337513, at *2. Accordingly, Plaintiff's Motion for Recusal is **DENIED**.

## III.   ENFORCEMENT OF THE SETTLEMENT AGREEMENT

The central issue presented is whether there was a binding contract between the Parties in the form of a settlement agreement.

### A.   Plaintiff's Rule 60(b) Motion

FED. R. CIV. P. 60(b) provides, "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons":

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Id. Here, Plaintiff asks the Court to void the April 11, 2013 Order of Dismissal pursuant to Rule 60(b)(6). Pl.'s Br. at 4. Relief under Rule 60(b)(6), however, "is available only in cases evidencing extraordinary circumstances, Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), and only when the relief sought is based upon 'any other reason' than a reason which would warrant relief under 60(b)(1-5)." Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975); see also Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC, 2013 WL 2459887, at *1 (D.N.J. June 6, 2013) (citing Martinez-McBean v. Gov't of Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977)); Am. Ass'n Blood Bankers v. Boston Paternity, 2009 WL 3379893, at *4 (D.

Md. Oct. 16, 2009) (pro se Plaintiff held to the same standards of evidence to support a Rule 60(b) motion).

Although Plaintiff's Motion is styled as one for relief under Rule 60(b)(6), it is "the function of a motion, and not the motion's caption, [that] dictates which Rule applies." Howard Int'l, Inc. v. Cupola Enterprises, LLC, 2006 WL 625210, at *1 (D.N.J. Mar. 10, 2006). Plaintiff argues that the Court should reopen the case because the "Settlement Agreement/Release was not consummated/ratified by either party nor merged into the judgment." Pl.'s Br. at 6.[3] Plaintiff's arguments appear to implicate Rule 60(b)(1) (mistake, inadvertence, surprise, excusable neglect) and Rule 60(b)(4) (judgment is void) as opposed to Rule 60(b)(6). In any case, the function of Plaintiff's Motion is to set aside the Order of Dismissal. Since the Order was predicated on the validity of the Agreement, Plaintiff's arguments will be addressed below in connection with Defendants' Motion to Enforce. As Court concludes that the Parties' Agreement was binding and enforceable, Plaintiff's Rule 60(b) Motion is **DENIED**.

      B.      **Defendant's Motion to Enforce: Settlements as Contracts**

A settlement agreement is a form of contract. Mortellite v. Novartis Corp. Prot.,Inc., 460 F.3d 483, 492 (3d Cir. 2006). The agreement need not have "every possible contractual provision" to be enforceable. Excelsior Ins. Co. v. Pensbury Pain Ctr., 975 F. Supp. 342, 349 (D.N.J. 1996). As long as the essential terms are defined, gaps within the agreement should not frustrate the intentions of the parties. Id (citing Bistricer v. Bristricer, 231 N.J. Super. 143, 147, 55 A.2d 45 (Ch. Div. 1987) (a contract is binding when the parties' intent is captured by the agreement).

---

[3] For example, Plaintiff argues that meeting with a "financial counselor" prior to consummation of the Agreement was an essential term of the Agreement. See, infra, at pp. 9-10.

8

Here, the Parties met over a period of several hours and agreed to the essential terms of the settlement. Despite some outstanding "housekeeping" issues, their Agreement was nonetheless placed on the record. Specifically, Plaintiff agreed to accept $10,000 to settle all of his claims against all of the Defendants. Tr. of April 9, 2013 Hearing at 4:1-15. It was also agreed that there was to be an allocation of the settlement proceeds between Plaintiff's claims for emotional distress and for lost income. Finally, Defendants agreed to recharacterize the basis of Plaintiff's termination. Id. These are the essential terms of the Agreement and are not disputed.

The additional terms that were being discussed between the Parties after April 9, 2013 were not essential to the settlement. Plaintiff alleges that meeting with a "financial counselor" was essential. Pl.'s Reply Br. at 2. The transcript, however, shows that only a suggestion was made for the Plaintiff to meet with a financial counselor or advisor before deciding how the settlement amount would be allocated. Tr. of April 9, 2013 Hearing at 6:6-10 (Plaintiff "may seek input from an advisor or a financial consultant to give him some input on a question of allocation of the settlement proceeds.")).[4]

Nevertheless, Plaintiff's argument misses the mark. The issue is not whether meeting with a financial advisor (or legal counsel) was an essential term of the Agreement. Despite its questionable wisdom, Plaintiff was free to meet with counsel. But he was not entitled to unilaterally and materially alter the terms of the Agreement—especially in the manner which he proposed. The underlying reason Plaintiff wanted to consult with an attorney or financial advisor was to seek input on how to best allocate payment of the settlement proceeds for tax purposes. And, to be sure, Defendants appeared at all times willing to work with Plaintiff in order to

---

[4] Despite the Court's prior urgings, after the settlement terms were negotiated, Plaintiff decided to seek input from the firm of Coronato Brady and Kunz. Pl.'s Reply Br. at 4. Plaintiff then sought a second opinion from the Palletieri Firm. There is no indication that Plaintiff ever consulted with a financial advisor.

accommodate any reasonable modification request. However, when Plaintiff proposed to allocate 100% of the settlement proceeds toward pain and suffering, his modification crossed the line from reasonable to arguably fraudulent. In other words, the Parties' intention to reasonably negotiate the details of the Agreement was certainly contemplated. The right to materially alter the Agreement, however, was decidedly not.

Finally, the fact that Defendants were amenable to Plaintiff's requests for changes to the Agreement regarding the nature of his separation (from termination to voluntary resignation to RIF) does not demonstrate, as Plaintiff maintains, that there was any lack of intent to be bound by the previously agreed upon, essential terms of the Agreement.

Plaintiff's arguments, therefore, are not persuasive. Plaintiff's proposed terms should not frustrate the overall intent of the Parties to be bound by the Agreement. See Excelsior, 975 F. Supp. at 349 (citation omitted) (so long as the basic terms are sufficiently addressed, gaps can later be filled without frustrating the intent to be bound). Accordingly, Plaintiff's Motion to Reopen is **DENIED** and Defendants' Motion to Enforce the Settlement is **GRANTED**.

## IV.  CONCLUSION & ORDER

The Court having considered the papers submitted and opposition thereto pursuant to FED. R. CIV. P. 78, and for the reasons set forth above;

**IT IS** on this 8th day of August, 2013,

**ORDERED** that Plaintiff's Motion for Recusal [dkt. no. 36] is **DENIED**; and it is further

**ORDERED** that Plaintiff's Motion to Reopen the Case [dkt. no. 32] is **DENIED**; and it is further

**ORDERED** that Defendants' Motion to Enforce the Settlement [dkt. no. 30] is **GRANTED**; and it is further

10

**ORDERED** that Defendants may submit an application for attorneys' fees incurred in connection with the Motion to Enforce and defending Plaintiff's Motions. Defendants must submit an appropriate application by August 23, 2013.

s/ Douglas E. Arpert
**DOUGLAS E. ARPERT, U.S.M.J.**
