**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GEORGE J. DAPONTE, | |
| Plaintiff, | Civil Action No. 12-4016 (MAS) (DEA) |
| v. | |
| BARNEGAT TWP. SCHOOL DISTRICT B.O.E., et al., | MEMORANDUM OPINION |
| Defendants. | |

**SHIPP, District Judge**

This matter previously came before the Honorable Douglas E. Arpert on several motions. Defendants Barnegat Township School District Board of Education, Joseph Saxton and Jason Bing ("School District Defendants") filed a Motion to Enforce Settlement. (ECF No. 30.) Co-Defendants New Jersey Education Association, Joan Szlaga, Barnegat Education Association and Lou Balkan ("Association Defendants")[1] joined in the School District Defendants' Motion. (ECF No. 31.) *Pro se* Plaintiff George J. DaPonte ("Plaintiff") opposed Defendants' Motion. (ECF No. 35.) In addition, Plaintiff filed a Motion to Reopen the Case (ECF No. 32) and Defendants opposed (ECF Nos. 33-34). Plaintiff also filed a Motion to Recuse or Disqualify Judge Arpert. (ECF No. 36.)

In his August 8, 2013 Memorandum Opinion & Order ("Aug. 8th Opinion"), Judge Arpert: (1) denied Plaintiff's Motion for Recusal; (2) denied Plaintiff's Motion to Reopen the Case; and (3) granted Defendants' Motion to Enforce Settlement. On August 28, 2013, Plaintiff

---

[1] The School District and Association Defendants will be collectively referred to as "Defendants."

filed a Motion for Reconsideration (ECF No. 41) and Defendants opposed (ECF Nos. 42-43). On November 6, 2013, Plaintiff submitted a brief entitled "New Evidence in Support of the Motion for Reconsideration." (ECF No. 44.) The School District Defendants filed opposition. (ECF No. 45.)

The Court has treated Judge Arpert's August 8th Opinion as a Report and Recommendation and has performed a *de novo* review of the record.[2] In addition, the Court has decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court finds good cause to grant Defendants' Motion to Enforce Settlement and to deny Plaintiff's Motion to Reopen the Case.

## I.   BACKGROUND

### A.   Factual Background

On May 9, 2012, Plaintiff filed a Complaint against the School District Defendants in the Superior Court of New Jersey, Ocean County. (Compl., ECF No. 1-2.) The School District Defendants removed the matter to federal court on June 29, 2012. On October 3, 2012, Plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 9.) The Amended Complaint added the Association Defendants and included claims based on breach of contract, discrimination, wrongful termination, and breach of the duty of fair representation.

From September 21, 2012 through April 2013, Judge Arpert held an initial scheduling conference and an in-person status conference, conducted three telephone conferences, entered three scheduling orders, and decided motions to compel discovery. On April 9, 2013, Judge Arpert held a settlement conference. The Parties reached an Agreement and put the terms of the

---

[2] Pursuant to Local Civil Rule 72.1, United States Magistrate Judges are authorized to perform all judicial duties assigned by the Court, including conducting evidentiary hearings and submitting proposed findings of fact and recommendations for the disposition of dispositive motions. L. Civ. R. 72.1 (a)(2).

Agreement on the record. (4/9/13 Tr., ECF No. 38.) After a dispute arose regarding the terms of a release, the present motions ensued.

### B. Parties' Positions

The School District Defendants assert that the Parties entered into a Settlement Agreement on April 9, 2013. (Behr Cert. ¶ 8, ECF No. 30-3.) On April 19, 2013, counsel for the School District Defendants, Matthew J. Behr ("Behr"), forwarded a general release to Plaintiff. (*Id.* ¶ 10.) On April 24, 2013, Plaintiff returned a revised release that changed a number of settlement terms. (*Id.* ¶ 11.) Therefore, Behr requested a conference with Judge Arpert to address the issue. (*Id.* ¶ 12.) After Judge Arpert became involved, only one issue remained outstanding. Namely, Plaintiff wanted the release to reflect a different reason for his termination. (*Id.* ¶ 13.) Behr forwarded a revised release on May 9, 2013. (*Id.* ¶ 14.) Plaintiff responded and proposed alternative language relating to his last day. (*Id.* ¶ 15.) Behr then sent a revised release with the exact language Plaintiff proposed. (*Id.* ¶ 16.)

On May 16, 2013, Plaintiff executed and provided an entirely new release that changed the material terms of the settlement. (*Id.* ¶ 17.) Plaintiff's release: (1) changed the amount of the settlement from $10,000 to $10,930; (2) apportioned the total amount between Counts 1 through 3 of the Amended Complaint; and (3) indicated that the settlement amount was based on pain and suffering. (*Id.*) Behr advised Plaintiff that his proposed release was not acceptable. Since pain and suffering damages cannot be awarded on breach of contract claims, Behr related that Plaintiff's proposed release could be construed as an attempt to defraud the IRS. (*Id.* ¶¶ 19-20.)

The Association Defendants likewise assert that the Parties reached an amicable settlement on April 9, 2013. (Ass'n Defs.' Moving Br. 1, ECF No. 31.) They argue that Plaintiff was afforded ample time in advance to confer with counsel. (*Id.* at 2.) The Association

Defendants additionally argue that given the fair terms of the Settlement Agreement and the absence of duress or undue means, the Settlement Agreement must be enforced as originally written. (*Id.* at 3.)

Plaintiff opposes Defendants' motion and argues that a settlement agreement does not exist between the Parties. According to Plaintiff, "the court does not retain jurisdiction to enforce that which does not exist, nor can the court . . . entertain a breach of contract action, nor can the court award damages to the defendant to recover attorney fees to prepare a motion to compel settlement (as the Court did by Order of April 11, 2013), or a decree of specific performance." (Pl.'s Moving Br. 4, ECF No. 32.) Plaintiff asserts that there is good cause for the Court to reopen the case pursuant to Rule 60(b). (*Id.*) Plaintiff additionally argues that "the court should most carefully weigh its judgment and therefore presents the opportunity to the court before Plaintiff undertakes a local appeal of the judgment and Third Circuit appeal, if necessary." (Pl.'s Suppl. Br. 2-3, ECF No. 41.) Plaintiff believes that Judge Arpert did not provide sufficient attention to his suit and must reconsider his unperceived bias and impartiality. (*Id.* at 3.)

According to Plaintiff, the $10,000 settlement amount was the "first key point of record" and the ability of Plaintiff to seek the advice of financial counsel prior to consummating the agreement was the "second key point of record." (*Id.* at 4.) Plaintiff argues that Judge Arpert deliberately ignored his arguments and used "leading the witness" tactics when questioning him. (*Id.* at 9-10.) Plaintiff requests that Judge Arpert: (1) "recluse [sic] himself entirely from the case"; (2) vacate his previous judgments; and (3) refer his Motion to Reopen the Case to an impartial judge to be reheard. (*Id.* at 11-12.)

## II. DISCUSSION

The enforceability of settlement agreements is governed by state contract law. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009); *Metro. Life Ins. v. Hayes-Green*, No. 07-2492, 2008 WL 2119976, at *1 (D.N.J. May 20, 2008). In New Jersey, there is a strong public policy in favor of settlements. *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990). Therefore, courts will "strain to give effect to the terms of a settlement whenever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 528 (App. Div. 1985); *see also Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003). Although New Jersey has a strong policy favoring settlements, a court will not enforce a settlement agreement "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." *Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App. Div. 1955)). A settlement agreement does not need to contain every possible term to be enforceable. *Id.* at 148. Rather, "[s]o long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.*

Here, the Court has performed a *de novo* review of the record and finds sufficient evidence to conclude that the Parties agreed to the essential terms of the Settlement Agreement. The April 9, 2013 transcript reflects that the Parties spent three hours in settlement discussions and reached the broad terms of a settlement. (4/9/13 Tr. 3:7-9, ECF No. 38.) Plaintiff indicated that he was amenable to a settlement of his three claims for a total sum of $10,000. (*Id.* at 4:7-10.) In addition, the Board of Education agreed to modify the basis of Plaintiff's separation from the District to allow for a voluntary resignation. (*Id.* at 4:11-15.)

Judge Arpert and the Parties also discussed other details related to the Agreement on April 9, 2013. Mr. Behr noted that the Board of Education would have to take formal action to approve the settlement. (*Id.* at 4:19-21.) Judge Arpert told Mr. Behr to send Plaintiff correspondence detailing exactly what he intended to propose to the Board. (*Id.* at 5:5-22.) Judge Arpert also stated:

> I also understand that Mr. DaPonte may seek input from an advisor or a financial consultant to give him some input on a question of allocation of the settlement proceeds. And I would expect you to have some conversation about that as it's ultimately memorialized in whatever settlement agreement you have. . . . Maybe you'll have further discussion on that.

(*Id.* at 6:6-15.)

Towards the conclusion of the discussion, Judge Arpert asked Plaintiff whether he wished to address anything else. Plaintiff stated:

> Yes, there's one thing, Your Honor. If it's not too hard, and if it could be memorialized in the agreement, if – that if there were any – ever any referrals – referral calls regarding myself made to the School District, that they not be addressed by any of the defendants that were initially named in this lawsuit, particularly defendant Bing, Board of Directors, or – well, Superintendent Bing, that's out of the question since he's in another District. But rather referred to, as it should be, to Personnel.

(*Id.* at 7:15-23.)

Judge Arpert and the Parties discussed the issue after which Plaintiff stated, "Very good. Thank you." (*Id.* at 8:9.) When Judge Arpert asked whether Plaintiff had anything else to discuss, he mentioned a deposition he was scheduled to attend at the end of the month. (*Id.* at 8:21-23.) Judge Arpert responded that there would be no further discovery in the matter. (*Id.* at 8:24-9:1.)

Following the settlement conference, Judge Arpert received correspondence from Mr. Behr indicating that Plaintiff requested a formal letter of apology, had issues regarding the tax

treatment of the settlement, and raised concern that his unemployment compensation benefits might be impacted by the characterization of the settlement. (5/21/13 Tr. 4:6-12, ECF No. 39.) Judge Arpert then conducted a telephone conference with Plaintiff. (*Id.* at 4:13-14.) They discussed the correspondence and reached an understanding as to how the concerns would be addressed. (*Id.* at 4:13-17.) Mr. Behr was amenable to the few modifications Plaintiff requested and Plaintiff was satisfied at the modest modifications to the settlement terms. (*Id.* at 4:18-21.)

However, on May 20, 2013, Judge Arpert received correspondence from Mr. Behr indicating that Plaintiff would not execute a release in the form agreed upon and that Plaintiff advised Mr. Behr to notify the Court that the settlement had failed. (*Id.* at 4:22-5:3.) Therefore, Judge Arpert conducted another telephone status conference on May 21, 2013.

The May 21, 2013 transcript reflects the following colloquy between Judge Arpert and Plaintiff:

> THE COURT: Mr. DaPonte, before I get into the specifics of the differences between these two forms of release, you acknowledge that you and I had a conversation subsequent to our gathering on April 9th at which point you had seen the form of release that had been proposed by Mr. Behr, you had certain questions about that release, which we discussed at some length, correct?
>
> MR. Da PONTE: That's correct, Your Honor.
>
> THE COURT: Why then do we now have a competing and substantially different form of release in this case?
>
> MR. DaPONTE: Once I received the – well, looking at the release, I consulted with another law firm, particular interest in the release was referenced to Medicaid costs, which should be – well, which would be incorporated into the final settlement which could impact future expenses for psychiatric care and so forth down the road. That was a significant issue relative to providing a release like that.
>
> THE COURT: I don't understand what you're talking about.
>
> MR. DaPONTE: The settlement – the reference to the settlement in the release which, if I sign it, then future care related to this particular case, which is any

psychiatric type of, I guess, treatments that could be associated with this particular situation should – well, should be borne – should be incorporated into the final settlement. Meaning I would have to pay any future expenses – medical expenses out of the settlement, which is not acceptable.

THE COURT: First of all, you acknowledge that we never discussed – it was never an element of the settlement. Future medical costs was never an element of the settlement that was discussed when we were together on April 9th, correct?

MR. DaPONTE: Right.

THE COURT: So, this is something that you have become concerned about since we were together?

MR. DaPONTE: Exactly. When I consulted with the firm, they read it, and they –

THE COURT: You acknowledge that when you were here the first time, when you were here the second time, I asked you whether you intended to retain counsel, correct?

MR. DaPONTE: That is correct.

THE COURT: In fact, I encouraged you to retain counsel, did I not?

MR. DaPONTE: That is correct.

THE COURT: Okay. You, for whatever reason, decided you wanted to proceed on your own. So, you decided after we had reached a settlement, the settlement was negotiated, concluded, and placed on the record, that at that point you wanted to talk to a lawyer?

MR. DaPONTE: I did have another attorney. I provided the document to him, he didn't raise that concern. So, I went to another firm who was handling another case, and they raised other issues which the prior attorney didn't. And so with that new information, I –

THE COURT: Why is there a different settlement amount? Where does this $930 come from?

MR. DaPONTE: Well, because of this particular reason, all the stipulations in it, I had to hire a new firm and pay an hourly rate. So, I put in my expenses.

THE COURT: You have overplayed your hand, Mr. DaPonte.

(*Id.* at 5:16-8:1.)

Judge Arpert then advised the Parties that they could file their respective motions. After the motions were fully briefed, Judge Arpert issued an Opinion on August 8, 2013. The Opinion provides:

> Here, the Parties met over a period of several hours and agreed to the essential terms of the settlement. Despite some outstanding "housekeeping" issues, their Agreement was nonetheless placed on the record. Specifically, Plaintiff agreed to accept $10,000 to settle all of his claims against all of the Defendants. It was also agreed that there was to be an allocation of the settlement proceeds between Plaintiff's claims for emotional distress and for lost income. Finally, Defendants agreed to recharacterize the basis of Plaintiff's termination. These are the essential terms of the Agreement and are not disputed.
>
> The additional terms that were being discussed between the Parties after April 9, 2013 were not essential to the settlement. Plaintiff alleges that meeting with a "financial counselor" was essential. The transcript, however, shows that only a suggestion was made for the Plaintiff to meet with a financial counselor or advisor before deciding how the settlement amount would be allocated. . . .
>
> Nevertheless, Plaintiff's argument misses the mark. The issue is not whether meeting with a financial advisor (or legal counsel) was an essential term of the Agreement. Despite its questionable wisdom, Plaintiff was free to meet with counsel. But he was not entitled to unilaterally and materially alter the terms of the Agreement – especially in the manner in which he proposed. The underlying reason Plaintiff wanted to consult with an attorney or financial advisor was to seek input on how to best allocate payment of the settlement proceeds for tax purposes. And, to be sure, Defendants appeared at all times willing to work with Plaintiff in order to accommodate any reasonable modification request. However, when Plaintiff proposed to allocate 100% of the settlement proceeds toward pain and suffering, his modification crossed the line from reasonable to arguably fraudulent. In other words, the Parties' intention to reasonably negotiate the details of the Agreement was certainly contemplated. The right to materially alter the Agreement, however, was decidedly not.
>
> Finally, the fact that Defendants were amenable to Plaintiff's requests for changes to the Agreement regarding the nature of his separation (from termination to voluntary resignation to RIF) does not demonstrate, as Plaintiff maintains, that there was any lack of intent to be bound by the previously agreed upon, essential terms of the Agreement.

(Aug. 8th Op. 9-10) (internal citations omitted).

The Court finds Judge Arpert's decision to be well-reasoned and entirely on point. Having performed a *de novo* review of the record, the Court reaches the same conclusions as Judge Arpert. The record reflects that the Parties agreed to the essential terms of the Settlement Agreement on April 9, 2013. When the Parties went to fill in the gaps after the conference, Defendants attempted to accommodate Plaintiff's reasonable modification requests. However, Plaintiff ultimately tried to materially change the Agreement. He unilaterally increased the settlement amount from $10,000 to $10,930. He also attempted to allocate the proceeds in a way that could be potentially considered fraudulent.

Moreover, Plaintiff's efforts to characterize Judge Arpert's behavior as coercive are unpersuasive. Judge Arpert advised and recommended that Plaintiff retain counsel but Plaintiff originally chose not to. The record also reflects that Judge Arpert had a number of conferences with the Parties over the course of the litigation. In addition, the April 9 settlement conference lasted three hours. During the April 9 conference, Plaintiff raised issues regarding the settlement and discussed them with counsel and the Court. It is clear from the pleadings and transcripts that Plaintiff is both educated and articulate. A review of the record indicates that Plaintiff agreed to the material terms, later had second thoughts and attempted to change those terms. However, Plaintiff's "buyer's remorse" does not constitute grounds to repudiate the Settlement Agreement. Therefore, the Court finds good cause to grant Defendants' Motion to Enforce the Settlement Agreement.[3]

---

[3] The Court also does not find good cause to reopen the case pursuant to Federal Rule of Civil Procedure 60(b). Plaintiff acknowledges, "While a court will read a pro se litigant's papers liberally and construe them to raise the strongest arguments they suggest, a pro se litigant is not excused from the requirement of producing highly convincing evidence to support a Rule 60(b) motion." (Pl.'s Moving Br. 4.) Here, Plaintiff failed to demonstrate an entitlement to relief under Rule 60(b).

**III.     CONCLUSION**

The Court has thoroughly reviewed Defendants' Motion to Enforce the Settlement Agreement, Plaintiff's Motion to Reopen the Case, the opposition and reply papers for the motions, the trial and telephone status conference transcripts, Judge Arpert's Opinion, Plaintiff's Motion for Reconsideration, and Defendants' opposition. The Court finds that the Parties entered into an enforceable Settlement Agreement in this matter. Therefore, Defendants' Motion to Enforce the Settlement is granted. Plaintiff's Motion to Reopen the Case is denied.[4] The Court denies without prejudice Defendants' request for attorneys' fees.

    s/ Michael A. Shipp    
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: March 31, 2014

---

[4] The Court does not reach Plaintiff's motion to the extent it requests Judge Arpert to reconsider his recusal decision. This shall be separately addressed by Judge Arpert.